

FILED
2023 Sep-26  AM 11:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | | |
|---|---|---|
| **VALERIE WEBB, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **7:23-cv-00314-LSC** |
| | ) | |
| **RIVER BIRCH PARK, L.L.C., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

_____

| | | |
|---|---|---|
| **JEFFERY MCJENKIN, et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **7:23-cv-00534-LSC** |
| **RIVER BIRCH PARK, L.L.C., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

_____

| | | |
|---|---|---|
| **CHRISTOPHER S. SPRAYBERRY, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **7:23-cv-00535-LSC** |
| **vs.** | ) | |
| | ) | |
| **RIVER BIRCH PARK, L.L.C., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

_____

| | | |
|---|---|---|
| PATSY STEWART, | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **7:23-cv-00830-LSC** |
| RIVER BIRCH PARK, L.L.C., et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

| | | |
|---|---|---|
| JACK RAYMON and TERRI J. RAYMON, | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| vs. | ) | **7:23-cv-00831-LSC** |
| RIVER BIRCH PARK, L.L.C., et al., | ) | |
| | ) | |
| **Defendants.** | ) | |


## Memorandum of Opinion

Plaintiffs bring this action against River Birch Park, LLC; Robertson Construction Co., LLC; the County of Tuscaloosa; the Tuscaloosa County Commission; the United States of America; the U.S. Army Corps of Engineers; Ryan Shirley, Inc.; and Bobby Hagler in his individual and official capacity as the County Engineer of Tuscaloosa.

Before the Court is Defendants' County of Tuscaloosa, Tuscaloosa County Commission, and Bobby Hagler (collectively, "County Defendants") Motion to Dismiss. (Doc. 3.) Also before the Court is Defendants' the United States of America and U.S. Army Corps of Engineers (collectively, "Federal Defendants") Motion to Dismiss. (Doc. 32.) And before the Court is Defendant River Birch Park, L.L.C.'s Motion to Dismiss the Complaint filed by the Webb Plaintiffs (Doc. 18), Motion to Dismiss the Complaint filed by the Raymon Plaintiffs (Doc. 30), and Motion to Dismiss the Complaint filed by Plaintiff Patsy Stewart (Doc. 31).

For the reasons explained below, the County Defendants' Motion to Dismiss on Count I is GRANTED and the Federal Defendants' Motion to Dismiss on Counts I–V is GRANTED. As there are no more federal claims, the Court declines to exercise jurisdiction over the remaining state law claims. The River Birch Park, L.L.C.'s Motions to Dismiss (Docs. 18, 30, 31) are therefore MOOTED. This action is DISMISSED as to all defendants.

## I.    FACTS

All plaintiffs own lots in a subdivision named River Point, which is located on the banks of the Black Warrior River. (Webb Doc. 1 ¶ 14.) In the Winter of 2020, Plaintiffs Valerie and Douglas Webb began to notice sliding earth and cracking on their properties. (*Id.* ¶ 15.) By Summer of 2021, there was a total slope failure. (*Id.*

¶ 19–21.) The Webb Plaintiffs discovered a drainage pipe, located on the left side of the property, in the end of May or beginning of June 2021. (*Id.* ¶ 20.)

In February or March 2020, Plaintiffs Jeffery and Diane McJenkin noticed that the ground in their backyard was falling, and that cracks were forming. (McJenkin Doc. 1 ¶ 15.) In May 2020, the McJenkin Plaintiffs repaired all the drainage piping and the cracks. (*Id.* ¶ 16.) However, their yard continued to crack. (*Id.* ¶ 17.) In January 2022, the McJenkin Plaintiffs learned, from a conversation with a neighbor, that the issues might stem from a slope failure. (*Id.* ¶ 20.)

In January or February 2020, Plaintiffs Christopher and Caroline Sprayberry began to notice cracks in their yard. (Sprayberry Doc. 1 ¶ 15.) In April 2020, the Sprayberry Plaintiffs called AFS and were told that the issues were caused by differential settlement. (*Id.* ¶ 16.) New drainage piping was installed (*Id.* ¶ 16), and in May 2020, helical piers were installed (*Id.* ¶ 17). But in February 2021, more cracks formed. (*Id.*) The Sprayberry Plaintiffs responded by replacing the corrugated storm drainage pipes with hard pipes, believing that water runoff was the problem. (*Id.*) In June or July 2021, the helical piers failed. (*Id.* ¶ 19.) On or around April 21, 2022, AFS sent the Sprayberry Plaintiffs an email, advising them to move out of their house. (*Id.* ¶ 21.) An AFS employee came to the Sprayberry house and refused to send anyone into the backyard, stating that "it could fall in at any time." (*Id.*)

In Spring 2022, Plaintiff Patsy Stewart began to notice trees in her backyard were falling over and cracks were forming. (Stewart Doc. 1 ¶ 14). By that summer, the slope began to fail. (*Id.* ¶ 15.)

In Spring 2022, Plaintiffs Jack and Terri Raymon began to notice the ground dropping, and they subsequently built a retaining wall. (Raymon Doc. 1 ¶ 15.) In May 2022, the Raymon Plaintiffs discovered a major crack in their yard. (*Id.* ¶ 16.) In July 2022, the Raymon Plaintiffs learned that the issue was caused by a slope failure. (*Id.* ¶ 18.)

River Point's plat shows "no storm drainage locations, designs, or plans." (*Id.* ¶ 30.) This Plat was approved by Hagler, the county engineer, on or about April 17, 2001. (*Id.* ¶ 31.)

Defendant Robertson Construction developed and constructed the subdivision. (*Id.* ¶ 33.) Ryan Shirley, Inc. installed the storm drain system. (*Id.*) The storm drainage system "discharged storm runoff collected from the length of River Point Drive onto the slope behind the residence now situated on Lot 27." (*Id.* ¶ 35.) According to Plaintiffs, "[t]he drainage system has now utterly failed creating significant localized erosion and contributing to the general failure of the slope between the residences . . . and the riverbank."  (*Id.* ¶ 36.)

The Tuscaloosa County Subdivision Regulations in effect at the time River Point was built required that "no land shall be subdivided until proper provision has

been made for drainage." (*Id.* ¶ 36 (citing Doc. 1-1, at 3).) The Regulations also state that "The Final Plat shall show the following . . . Location, dimensions, purposes, and restrictions of any easements." (*Id.* ¶ 44.) This includes storm drain easements.

## II.   STANDARD OF REVIEW

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, to withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint "must plead enough facts to state a claim to relief that is plausible on its face." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347–48 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Stated another way, the factual allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). A complaint that "succeeds in identifying facts that are suggestive enough to render [the necessary elements of a claim] plausible" will survive a motion to dismiss. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

In evaluating the sufficiency of a complaint under Rule 12(b)(6), this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id*. Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id*. If the pleading "contain[s] enough information regarding the material elements of a cause of action to support recovery under some 'viable legal theory,'" it satisfies the notice pleading standard. *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) (quoting *Roe v. Aware Woman Ctr. for Choice, Inc*., 253 F.3d 678, 683– 84 (11th Cir. 2001)).

"Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction can be asserted on either facial or factual grounds." *Carmichael v. Kellogg, Brown & Root Services, Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009) (citing *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003)). When there is a facial challenge, the Court assumes the complaint's allegations are true and bases its decision on those allegations. *Id.* But when "a defendant raises a factual attack on subject matter jurisdiction, the district court may consider extrinsic evidence such as deposition testimony and affidavits." *Id.* (citing *Morrison*, 323 F.3d at 925 n.5). In a factual

attack, the Court is "free to weigh the facts and [is] not constrained to view them in the light most favorable to [the plaintiff]." *Carmichael*, 572 F.3d at 1279 (citing *Carmichael v. Kellogg, Brown & Root Services, Inc.*, 654 F. Supp. 2d 1363, 1365 (N.D. Ga. 2008)).

### III.   ANALYSIS

All defendants except for the United States of America and the U.S. Army Corps of Engineers are domiciled in Alabama. Therefore, diversity jurisdiction does not exist in this case. *See* 28 U.S.C. § 1332.

Instead, in their Complaints, Plaintiffs assert that the bases for jurisdiction are: 28 U.S.C. § 1331, as the cause of action involves claims arising under 42 U.S.C. § 1983 and the Fifth Amendment and Fourteenth Amendment; 28 U.S.C. § 1343, "as this civil action seeks to recover damages or other relief under an Act of Congress providing for the protection of civil rights" (Webb Doc. 1, at 4); 28 U.S.C. § 1346, as the United States is a defendant; and 28 U.S.C. § 1367, as the remaining state law claims, if this Court has jurisdiction over them at all, fall under this Court's supplemental jurisdiction. Count I is styled as a "Violation of 42 U.S.C. § 1983," Count II is "Negligence and/or Wantonness," Count III is "Private Nuisance," Count IV is "Trespass," Count V is "Subjacent and/or Lateral Support," Count VI is "Fraudulent Suppression," and Count VII is "Civil Conspiracy."

Plaintiffs now concede that the U.S. Army Corps of Engineers should be dismissed as a defendant. (Doc. 43, at 3.) Plaintiffs further admit that Count I should be dismissed against the United States. (*Id.*) And Plaintiffs contend that Counts II–V, brought against the Federal Defendants, fall within the Court's admiralty jurisdiction under 46 U.S.C. § 30101 and 28 U.S.C. § 1333, rather than this Court's jurisdiction deriving from 28 U.S.C. § 1346. (*Id.* at 4.)

After these concessions, the only federal claims remaining in this case are Count I brought against the County Defendants, a takings claim and procedural due process claim brought pursuant to § 1983,[1] and Counts II–V brought against the Federal Defendants, state law claims arising under this Court's original admiralty jurisdiction. However, as explained below, Plaintiffs have failed to state a claim in Count I against the County Defendants, and this Court lacks subject matter jurisdiction over Claims II–V against the United States. Without any remaining claim under the Court's original jurisdiction, it declines to exercise supplemental jurisdiction over Plaintiffs' remaining claims. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

### a. COUNT I PROCEDURAL DUE PROCESS AND TAKINGS CLAIM BROUGHT AGAINST COUNTY DEFENDANTS PURSUANT TO § 1983

---

[1] 28 U.S.C. § 1343 is the jurisdictional counterpart to 42 U.S.C. § 1983. *Lynch v. Household Finance Corp.*, 405 U.S. 538, 540 (1972).

To establish liability under 42 U.S.C. § 1983, "a plaintiff must demonstrate both (1) that the defendant deprived [the plaintiff] of a right secured under the Constitution or federal law and (2) that such deprivation occurred under color of state law." *Arrington v. Cobb County*, 139 F.3d 865, 872 (11th Cir. 1998) (citing *Willis v. Univ. Health Serv.*, 993 F.2d 837, 840 (11th Cir. 1993)). A local government specifically can be held liable under 42 U.S.C. § 1983 when "execution of a government's policy or custom . . . inflicts the injury." *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978); *see also McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) ("[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that [the plaintiff's] constitutional rights were violated; (2) the [local government] had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation.")

In their Motion to Dismiss, the County Defendants generally argued for dismissal under Rule 12(b)(6) based on: (1) the statute of repose; (2) the general statute of limitations; (3) caveat emptor; (4) failure to allege a constitutional violation, either a takings claim or procedural due process claim, or otherwise satisfy the requirements of § 1983; (5) substantive immunity; and (6) qualified immunity regarding Hagler. The Court does not address the defenses of repose, caveat emptor, or substantive immunity because those defenses only apply to Plaintiffs' state law claims. The remaining defenses are each addressed in turn.

## 1. STATUTE OF LIMITATIONS

"All constitutional claims brought under § 1983 are tort actions and, thus, are subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." *Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 872 (11th Cir. 2017) (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)). In Alabama, there is a two-year statute of limitations for personal injury actions. *Boyd*, 856 F.3d at 872 (citing Ala. § 6-2-38).

"[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace*, 549 U.S. at 388. Some § 1983 causes of action accrue when a plaintiff has a "complete and present cause of action." *Foudy v. Indian River Cnty. Sheriff's Off.*, 845 F.3d 1117, 1123 (11th Cir. 2017) (quoting *Wallace*, 549 U.S. at 388). But other § 1983 causes of action accrue when "the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Foudy*, 845 F.3d at 1123 (quoting *Rozar v. Mullis*, 85 F.3d 556, 561–62 (11th Cir. 1996)). That is, for the cause of action to accrue, "[p]laintiffs must know or have reason to know that they were injured, and must be aware or should be aware of who inflicted the injury." *Rozar*, 85 F.3d at 562 (citing *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987)). This latter accrual date is called "the discovery rule," and it is typically applied in cases invoking constitutional or general civil rights claims.

*Foudy*, 845 F.3d at 1123 (citing *Rozar*, 85 F.3d at 562–63 (equal protection and takings claims)). Therefore, because the Plaintiffs have asserted constitutional claims, the Court applies the discovery rule.

The County Defendants argue that Plaintiffs' causes of action accrued in Winter 2020, when "the plaintiffs noticed their property 'sliding.'" (Doc. 3-1, at 4.) At the outset, the Court notes that it was the Webb Plaintiffs specifically who noticed the sliding Earth in 2020, not all plaintiffs. (Webb Doc. 1 ¶ 15.) Regardless, Plaintiffs argue that the Webbs' cause of action accrued in May or June of 2021 when the Webbs discovered the drainage pipe. (Doc. 12, at 10.) Applying the discovery rule to this case, and making all inferences in favor of the Webb Plaintiffs, it is conceivable that the Webb Plaintiffs did not know, and should not have known, that they were allegedly injured by the County Defendants until the discovery of the drainage pipe. Therefore, because the drainage pipe was not discovered until at least May 2021 and the Webbs filed this lawsuit on March 13, 2023, the Court assumes the two-year statute of limitations had not run.

The McJenkin Plaintiffs argue that their cause of action did not accrue until January 2022 when they had a conversation with a neighbor that revealed the possibility of a slope failure. (Doc. 12, at 11.)[2] Again, as the Court makes all

---

[2] The Court notes that in their Reply to the Federal Defendants' Motion to Dismiss that the Plaintiffs offer different dates of when their causes of action might have accrued. (Doc. 43, at 5.)

inferences at this stage in favor of the Plaintiffs, it is conceivable that the McJenkin Plaintiffs did not know, and should not have known, that they were allegedly injured by the County Defendants until this conversation. As this conversation did not occur until January 2022 and the McJenkins filed on April 25, 2023, the Court assumes the statute of limitations has not run.

The Sprayberry Plaintiffs argue that their cause of action accrued on April 21, 2022 after they received an email from the company installing helical piers on their property, advising them to move out of their house. (Doc. 12, at 12.) According to the Plaintiffs, "[t]his was when the Sprayberrys first suspected, or had reason to suspect, that something other than water runoff or differential settlement was causing the issues." (*Id.*) Making all inferences in favor of the Sprayberry Plaintiffs, the Court finds it conceivable that the cause of action accrued at that time. Because the Sprayberrys received the email on April 21, 2022 and the Sprayberrys filed their complaint on April 25, 2023, the Court assumes their claim is not barred by the statute of limitations.

In their Response to the County Defendants' Motion to Dismiss, Plaintiffs do not provide a specific date where Plaintiff Stewart's or the Raymon Plaintiffs' causes of action accrued. In the Court's review of Plaintiff Stewart's Complaint, it seems

---

But regardless of whether the Court considered the dates offered in that Reply to be the actual dates of accrual, the ultimate result would not change.

the earliest her cause of action could have accrued, based on the allegations in her Complaint, is at some point in 2022. (Stewart Doc. 1 ¶ 14–15.) This is when cracks began to form in her yard and the slope continued to fail. (*Id.*) Accordingly, as Stewart filed her complaint on June 27, 2023, the Court assumes her cause of action is not time-barred.

In the Court's review of the Raymons' Complaint, it is conceivable that their cause of action accrued in July 2022 when they discovered the slope failure. (Raymon Doc. 1 ¶ 18.) Therefore, as the Raymons filed their complaint on June 27, 2023, the Court assumes the statute of limitations does not bar their claim.

Because, when making all inferences in favor of the Plaintiffs and in accordance with the discovery rule, none of the Plaintiffs' complaints were filed two years after their causes of action accrued, the Court assumes the statute of limitations does not bar their claims. Accordingly, the Court does not grant the County Defendants' Motion to Dismiss on this ground.

### 2. FAILURE TO ALLEGE A CONSTITUTIONAL VIOLATION
#### i.   Takings Claim

"The Takings Clause of the Fifth Amendment prohibits government from condemning 'private property . . . for public use, without just compensation.'" *Bickerstaff Clay Prod. Co. v. Harris Cnty., Ga. By & Through Bd. of Comm'rs*, 89 F.3d 1481, 1489 (11th Cir. 1996). Plaintiffs asserting violations of the Takings

Clause bear the burden of proving that a taking was the "intended or . . . foreseeable result of authorized government action." *Spencer v. Benison*, 5 F.4th 1222, 1234 (11th Cir. 2021) (quoting *Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 29 (2012)). A plaintiff must show that in the ordinary course of events, absent the government action, plaintiffs would not have suffered the taking. *See United States v. Archer*, 241 U.S. 119, 132 (1916).

There are two types of takings. The first type is a physical taking, where the government takes ownership of property directly through a "physical appropriation." *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071 (2021). The classic example of a physical taking is where the government physically seizes property by eminent domain, though it is also a physical taking when the government takes other "actions that achieve the same thing." *Stop the Beach Renourishment, Inc. v. Fla. Dept. of Env't Prot.*, 560 U.S. 702, 713 (2010). For example, it is a physical taking when the government "uses its own property in a way that it destroys private property," *id.*, or when the government occupies private property by flooding it. *See Cedar Pont Nursery*, 141 S. Ct. at 2071.

The second type of a taking is a constructive or regulatory taking, where government action restricts the owners' rights to use the land so much that it "effectively condemns the landowner's property without paying for it." *Bickerstaff Clay Prod. Co.*, 89 F.3d at 1489 n.13. The government effectively condemns

property when it "forces a property owner to submit to a permanent physical occupation" or when it "deprives him of all economically beneficial use of his property." *Stop the Beach Renourishment, Inc.*, 560 U.S. at 713 (first citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 425–26 (1982); and then citing *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992)).

In this case, Plaintiffs do not claim that the County Defendants physically seized their property or otherwise occupied their property. Rather, Plaintiffs' claims appear to fall into the regulatory takings category. Plaintiffs contend that the slope failure resulted in a taking of their property. They allege that the County Defendants caused the slope failure by "failing to properly follow [their] own Regulations, conduct proper studies, and ensure that the River Point Subdivision was properly planned and safe for development." (Webb Doc. 1 ¶ 53.) As Plaintiffs see it, "the placement of [the] storm drain caused or contributed to the slope failure" (*Id.* ¶ 55), and the County Defendants are culpable for approving the Plat without notating the drain, as was required by regulation (*Id.* ¶ 54.), or conducting proper studies. (*Id.* ¶ 57.)

The County Defendants respond by arguing that the Plaintiffs have not "allege[d] that any action or failure to act on behalf of these defendants took the plaintiffs' property" and that the Plaintiffs have not "cite[d] any authority which would require the county to prevent avulsion of the riverbank." (Doc. 3-1, at 5.) The

County Defendants further contend that "the plaintiffs assert not that the government regulation deprived them of their property, but that the government's *failure to enforce* the regulation deprived them of their property." (Doc. 17, at 3.)

Plaintiffs' takings claim fails for one simple reason: Plaintiffs have not alleged that the County Defendants engaged in any conduct that would legally constitute a "taking." Here, the Plaintiffs have cited no case where the government's failure to enforce a regulation, conduct certain studies, or otherwise ensure a safe development resulted in a taking. And the Court has not found any case supporting this proposition. In the Court's examination of the caselaw, it appears that neither the Eleventh Circuit nor the Supreme Court has squarely addressed whether government inaction can constitute a taking.

But both the Federal Circuit and the D.C. Circuit have held that a taking will only result from affirmative government action and will "not arise from government inaction or failure to act." *St. Bernard Parish Government v. United States*, 887 F.3d 1354, 1361 (Fed. Cir. 2018) (holding that the government's failure to maintain or modify a channel, and its decision to not armor or repair erosion to the banks, was not a taking); *see Bench Creek Ranch, LLC v. United States*, 855 F. App'x 726 (Fed. Cir. 2021) (holding that the government's failure to prevent wild horses from drinking water on plaintiffs' land did not constitute a taking); *Farris v. District of Columbia*, 257 A.3d 509, 518 (D.C. Cir. 2021) (holding that the government's

failure to maintain an alleyway, which drained onto a plaintiff's property and damaged his home, did not constitute a taking).

In *St. Bernard Parish Government*, the Federal Circuit reasoned that Takings Jurisprudence has been "uniformly based" on affirmative acts. 887 F.3d at 1361. The Federal Circuit specifically relied on *United States v. Sponenbarger*, 308 U.S. 256 (1939), where the Supreme Court held that there was no taking when the government built a flood protection system that failed to fully safeguard a plaintiff's property from natural flood hazards. *St. Bernard Parish Government*, 887 F.3d at 1361; *see also Sponenbarger*, 308 U.S. at 265 (rejecting that the government is "a taker of all lands not fully and wholly protected"). The Federal Circuit also noted that the government's failure to act would only give rise to a torts claim. *See St. Bernard Parish Government*, 887 F.3d at 1362.

The Court finds the reasoning of these cases persuasive. Takings Jurisprudence has centered on affirmative government acts. A regulatory taking specifically requires a regulatory action that restricts the use of private property. *See Stop the Beach Renourishment, Inc.*, 560 U.S. at 713. There was no such regulatory action in this case. Rather, Plaintiffs take issue with the County Defendants' failure to enforce their regulations, conduct additional studies, or engage in some other unknown action to make the Subdivision safe. Plaintiffs' assertion that these inactions amounted to a regulatory taking is inconsistent with Takings Clause

Jurisprudence. Even further, it defies logic. While Plaintiffs might have some claim based on the facts alleged, it is not a takings claim. Rather, as the Federal Circuit stated in *St. Bernard Parish Government*, Plaintiff's potential remedy lies, if at all, in tort.

Because Plaintiffs have not pled sufficient facts showing that the County Defendants engaged in any action that legally constitutes a taking, Plaintiffs' takings claim does not give rise to a § 1983 violation.

### ii.      Procedural Due Process Claim

Plaintiffs' Complaint appears to primarily assert a takings claim, in addition to state law claims. The parties' briefing also focuses on the alleged taking and state law claims. However, in construing the Complaint in a light most favorable to the Plaintiffs, Plaintiffs' Complaint could also be construed as asserting a procedural due process claim. (*See* Doc. 1 ¶ 57.)

Plaintiffs' Complaint states that "[The County Defendants] deprived the Plaintiffs of their property rights without due process" (Doc. 1 ¶ 57), specifically by failing to "provide[] the Plaintiffs with any pre-deprivation or post-deprivation notice, process, hearing, or remedy" (Doc. 1 ¶ 58). The factual basis for their due process claim mirrors their takings claim. That is, Plaintiffs believe they were denied procedural due process when the County Defendants caused the slope failure by "failing to properly follow [their] own Regulations, conduct proper studies, and

ensure that the River Point Subdivision was properly planned and safe for development." (Doc. 1 ¶ 53.)

To establish a procedural due process claim, plaintiffs must show: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 342 F.3d 1225, 1231 (11th Cir. 2003). Plaintiffs undoubtedly have a protected property interest in the lots that they own. But it is unclear how the County Defendants deprived Plaintiffs of that interest. As the Court addressed above, the County Defendants did not "take" Plaintiffs' property and Plaintiffs have otherwise failed to "cite any authority which would require the county to prevent the avulsion of the riverbank." (Doc. 3-1, at 5.)

Therefore, because Plaintiffs have not alleged that the County Defendants took any action that deprived them of their property interest, Plaintiffs' procedural due process claim likewise fails.

### 3. HAGLER QUALIFIED IMMUNITY DEFENSE

Qualified immunity is an immunity available to government officials sued in their individual capacity. *See Bruce v. Beary*, 498 F.3d 1232, 1248 n.33 (2007). "The doctrine of qualified immunity provides that 'the government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights

of which a reasonable person would have known.'" *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To assert qualified immunity, a government official must first show that his actions were within the scope of his discretionary authority. *See Case*, 555 F.3d at 1325. After the government official makes this showing, the burden shifts to the plaintiff. *See id.* The plaintiff must establish that 1) a constitutional right has been violated and 2) the right was clearly established. *See Roberts v. Spielman*, 643 F.3d 899, 904 (11th Cir. 2011).

Hagler clearly acted within his discretionary authority when approving the Plat. *See Hartley v. Butler*, 147 F. App'x 61, 61–62 (11th Cir. 2005) (holding that a defendant was entitled to qualified immunity because "the allegations in Plaintiff's complaint are sufficient to show that [Defendant] was acting within his discretionary authority")[3]. A government official acts within his discretionary authority if his actions "are of a type that fell within the employee's job responsibilities." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). Approving a subdivision plat and deciding what studies to perform clearly falls within a county engineer's job responsibilities. Because Hagler acted within his discretionary

---

[3] While opinions from the Federal Appendix are not binding on this Court, these opinions can be persuasive authority.

authority, the burden shifted to the Plaintiffs to show that a constitutional right has been violated and that the right was clearly established.

Plaintiffs have not met their burden. As discussed above, Plaintiffs have failed to establish that any of the County Defendants violated their constitutional rights. As a result, Hagler is entitled to qualified immunity.

### b. COUNTS II–V STATE LAW CLAIMS BROUGHT AGAINST THE UNITED STATES

The United States has moved to dismiss Counts II–V under Rule 12(b)(1) for lack of subject matter jurisdiction, arguing that these Counts could only arise under this Court's admiralty jurisdiction and that Plaintiffs have not met all jurisdictional requirements. (Doc. 32.) While Plaintiffs originally asserted jurisdiction under 28 U.S.C. § 1346, a provision of the Federal Torts Claims Act, they now acknowledge that Counts II–V, as brought against the United States, can only arise under this Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and 46 U.S.C. § 30101. (Doc. 43.); *see DeRoy v. Carnival Corp.*, 963 F.3d 1302, 1312 (11th Cir. 2020) ("[W]hen admiralty is the only basis for jurisdiction, then admiralty jurisdiction applies, regardless of how the plaintiff designates her case.").

28 U.S.C. § 1333(1) grants the district courts general admiralty jurisdiction. 46 U.S.C. § 30101, commonly referred to as the Admiralty Extension Act ("AEA"), provides: "The admiralty and maritime jurisdiction of the United States extends to

and includes cases of injury or damage, to person, or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land." When a claim falls within the scope of the AEA, then either the Public Vessels Act ("PVA") or the Suits in Admiralty Act ("SAA") provides the exclusive remedy. *Anderson v. United States*, 317 F.3d 1235, 1237 (11th Cir. 2003) (citing 46 U.S.C. § 30101). To be clear, when a claim arises under the PVA or SAA, it is excluded from a court's jurisdiction deriving from the Federal Torts Claims Act. *See Anderson*, 317 F.3d at 1237 (citing 28 U.S.C. § 2680(d)).

For a tort claim to arise under the AEA, it must "satisfy conditions both of location and of connection with maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). The location test requires a court to "determine whether the tort occurred on navigable water or whether injury suffered was caused by a vessel on navigable water." *Id.* This test is easily satisfied here, as Plaintiffs allege that their properties were injured when the Army Corps of Engineers conducted dredging operations in and on the Black Warrior River. (Doc. 1 ¶ 47, 85.) The last time the Army Corps dredged the Black Warrior, it did so with a vessel. (Doc. 32-2 ¶ 7.) And the Black Warrior River has long been considered a navigable water. *See United States v. Robison*, 505 F.3d 1208, 1223 (11th Cir. 2007); (Doc. 32-2 ¶ 4). Therefore, "if [the United States] committed a tort, it must have done it while on navigable waters." *Grubart*, 513 U.S. at 534.

The connection test requires a court to 1) "assess the general features of the type of incident involved' to determine whether the incident has 'a potentially disruptive impact on maritime commerce'" and 2) "determine whether 'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'" *Grubart*, 513 U.S. at 1048 (quoting *Sisson v. Ruby*, 497 U.S. 358, 363, 364 n.2, 365). Dredging has consistently been found to directly affect maritime commerce and to be a traditional maritime activity, thus falling under this Court's admiralty jurisdiction. *Misener Marine Const., Inc. v. Norfolk Dredging Co.*, 594 F.3d 832, 837 (11th Cir. 2010) (first citing *Stewart v. Dutra Constr. Co.*, 543 U.S. 481, 495–97 (2005); then citing *Ellis v. United States*, 206 U.S. 246, 259, (1907); and then citing *Grubart*, 513 U.S. at 540); see *The V-14813*, 65 F.2d 789, 790 (5th Cir. 1933) ("There are many cases holding that a dredge . . . employed on navigable waters, is subject to maritime jurisdiction."). Consequently, the connection test is also satisfied.

But while Plaintiffs' claims satisfy both the location and connection tests, thereby establishing that their claims could only arise under this Court's admiralty jurisdiction, Plaintiffs have failed to fulfill a crucial jurisdictional requirement. As plainly stated in the AEA, "[a] civil action . . . may not be brought until the expiration of the 6-month period after the claim has been presented in writing to the agency owning or operating the vessel causing the injury or damage." 46 U.S.C. § 30101.

The 6-month waiting period is a jurisdictional requirement and must be "strictly construed." *Anderson*, 317 F.3d at 1240 (citing *Pacific Bell v. United States*, 636 F. Supp. 312, 314–15 (N.D. Cal. 1986)). Here, Plaintiffs admit that none of them waited six months from filing their claim with the Army Corps of Engineers before filing this lawsuit. (Doc. 43, at 4–5.)

Plaintiffs attempt to salvage their claims by arguing that strict application of the AEA would create an inequitable result because some, if not all, of Plaintiffs' claims could now be time-barred. (Doc. 43, at 5.) But even if that is true, the six-month waiting period is a jurisdictional requirement. The Court therefore lacks jurisdiction over these claims and must now dismiss.

Plaintiffs alternatively contend that the Webbs', McJenkins', and Sprayberrys' claims should be equitably tolled. (*Id.*) Because the Court lacks jurisdiction over these claims, it does not address this argument.

Therefore, because Counts II–V could only arise against the United States under the AEA, and because Plaintiffs failed to comply with the jurisdictional waiting requirement, the Court dismisses these counts for lack of subject matter jurisdiction.

## IV.  CONCLUSION

For the reasons discussed above, the County Defendant's Motion to Dismiss as to Count I and the Federal Defendants' Motion to Dismiss Counts I–V is due to be GRANTED. There being no further federal claims or claims asserted under the subject matter jurisdiction of 28 U.S.C. § 1331, 42 U.S.C. § 1983, the Fifth Amendment, the Fourteenth Amendment, 28 U.S.C. § 1343, 28 U.S.C. § 1346, 28 U.S.C. § 1367, 28 U.S.C. § 1333, or 46 U.S.C. § 30101, the Court declines to exercise jurisdiction over the remaining claims, all of which were under the Court's supplemental jurisdiction, thereby mooting River Birch Park, L.L.C.'s Motions to Dismiss (Docs. 18, 30, 31). These actions are DISMISSED. The Court reminds the parties that, if Plaintiffs wish to refile the state law claims in the state court, 28 USC § 1367(d) provides a tolling period of 30 days for claims over which the Court declines to exercise supplemental jurisdiction. *See Artis v. District of Columbia*, 583 U.S. 71 (2018). The Court will enter an Order consistent with this Memorandum of Opinion in each such action.

**DONE** and **ORDERED** on September 26, 2023.

L. Scott Coogler
United States District Judge

215755